## LOCKE vs. GARRETT.

1. Trover lies against an executor for a conversion by the testator in his life-time.

2. L, as sheriff, seized the property of G., and, refusing to surrender it on demand, sold it under executions against H., and, by direction of H., paid over the surplus, left from the sale after satisfying the executions, to G. as his agent: *Held*—That in an action of trover by G. against the executor of L., the surplus, thus paid over, cannot be allowed to go in reduction of damages.

Error to the Circuit Court of Greene. Tried before the Hon. Geo. D. Shortridge.

THIS was an action of trover by the defendant against the plaintiff in error, as executor of James C. Locke deceased, for the conversion by the latter in his life time, he being the sheriff of Greene county, of certain slaves, the property of the said defendant in error. The facts are sufficiently detailed in the opinion of the court.

J. B. CLARKE, for plaintiff in error:

1. That the action of trover is an equitable action, in which justice can be administered according to the principles of

equity.—McGowan v. Young, 2 Stew. & Por. 171; Baldwin v. Porter, 12 Conn. Rep. 473; same case, Sedgwick on Dam. 519, and 2 U. S. D. 10, § 211.

2. A sale by a sheriff confers no title to the property sold where the defendant in execution had no title.—8 Ohio Rep. 369; 7 Eng. Com. L. Rep. 272.

3. Where there is a sale by the sheriff of the property of one, under an execution against another for the debt of the latter, and a surplus left in the hands of the sheriff, such surplus does not belong to the defendant in execution, but to the owner of the property.—Taylor v. Williams, 1 Ired. L. Rep. 249; Wheeler & McCurdy v. Kennedy, 1 Ala. Rep. N. S. 292; Douglass v. Wallace, 11 Ohio Rep. 42; Watson on Sheriffs, 83; 7 vol. Law Lib.

4. And should such owner voluntarily surrender such surplus money to the defendant in execution, he the defendant disclaiming all title to the property from the sale of which such surplus accrued, the owner cannot be permitted to recover for such surplus in action against the sheriff.

5. A man cannot be principal and agent at the same time, nor, as agent for another, become the purchaser of his own goods for such other; consequently when as agent of a defendant in execution, he receives a surplus of the sheriff over satisfying an execution produced by the sale of his own property by such sheriff, he holds such surplus no as agent for the defendant in execution, but as his own money.

6. And should he place himself in the relation of agent to the defendant in execution in regard to such surplus, and it be decided that by such act he could not question the right of his principal, it would be his own folly, and a waiver of all right to recover therefor of the sheriff.

Erwin, *contra.*

CHILTON, J.—1. The statute declares that the action of trover shall survive for and against executors and administrators.—Clay's Dig. 313; Nettles, adn'r v. Barnett, 8 Porter's Rep. 181; 1 U. S. Dig. 63. We think the action maintainable against the executor. But this point is not urged by the counsel for the plaintiff in error. At the common law we

concede the action would not lie against an executor for a conversion by his testator.—2 Saund..Pl. 886.

2. It appears that the sheriff seized and sold the property of the defendant in error, who was the plaintiff below, upon an execution against one James S. Hemphill; that he was informed in writing by Hemphill, that the slaves did not belong to him, but was requested to sell them, and to pay the over-plus, after satisfying the executions in his hands against Hemphill, to the plaintiff, Garrett, whom he authorised to receive and receipt for the same as his agent. There remained after satisfying the executions against Hemphill, the sum of $440 67. For this sum the defendant below, who was the executor of the sheriff, produced and read the receipt of said Hemphill, signed by William Garrett, the plaintiff, said receipt reciting that it was the balance of the money upon the sale of the slaves now sued for, which were sold as the property of said Hemphill.

The court was asked by the counsel for the defendant to charge the jury, that the measure of damages was not the value of the slaves, but the price for which they were sold at the sheriff's sale, and compensation for their use while in the possession of the sheriff, deducting the surplus paid over to the plaintiff under the foregoing receipt, which charge the court refused to give so far as the surplus was concerned, but ruled that the defendant, in the estimating of the damages, had no right to have the surplus deducted, provided the jury should believe that he received the same merely in the capacity of agent for Hemphill. The defendant then asked the court to charge, that the plaintiff could not have been the agent of the defendant in execution to receive the surplus of the proceeds of the sale of his, the plaintiff's own property. This charge being refused, the plaintiff in error presents them now for our consideration.

It appears that Garrett demanded the property of the sheriff before he made the sale, and at the time of sale, forbid his selling, claiming it as his own. The bill of exceptions does not inform us whether Garrett, the plaintiff, ever paid over to Hemphill the money so paid him, as the surplus arising upon the sale, but the jury have affirmed by their verdict, that the agency did in fact exist, and that he received it in that capa-

city. We would then intend, if necessary to support the judg-ment, that it was paid over.

Conceding that the action of trover is an equitable action, and that the equities of the parties may be investigated and determined in it, we do not think that the plaintiff in error has shown any equitable right to lessen the recovery of the plain-tiff by the amount of the surplus which was paid him as agent of Hemphill. In what does this equity consist? He seized upon the property, being advised in writing by the defendant in the execution, that it was not his: It is demanded of him by the true owner, but he refuses to surrender it, and then with a full knowledge of its situation proceeds, in defiance of the rights of the plaintiff, to make a sale. The surplus was not paid to the plaintiff by the sheriff at the plaintiff's solicita-tion, but by virtue of instructions from the defendant in exe-cution to pay the same to him, as agent of said defendant. This operated then a payment to the defendant, Hemphill, whose receipt by his authorised agent the sheriff held. How then can he, or his executor, be heard to say that the plaintiff could not become an agent, since he fully recognised his agency, and made the payment to him as such, according to the written order of Hemphill? But we think it very clear after the plaintiff had demanded his property, and the sheriff refused to give it up, his right of action immediately accrued for the conversion. He was not bound to protect the sheriff in retaining money, which the sheriff paid him for another, with a full knowledge of the facts under which such payment was made, nor can the sheriff, upon any recognized principle of equity, cast upon the plaintiff, to whom he paid as agent, the burden of litigating with his principal the right to the money, merely for his (the sheriff's) indemnity.

In this case, the plaintiff chose to rely upon the sheriff's lia-bility to him for the conversion of the slaves sued for, which conversion was complete upon the refusal of the sheriff to give them up to him on his demand. He might well then have done as he did, rely upon this right of action for his indem-nity, and treat the property as the sheriff's. On the other hand, he could have elected to pursue the property and sue the purchaser, had a third person purchased, in detinue or trover, or after the sale and receipt of the money by the sheriff,

have brought his action of assumpsit, for money had and re-
ceived, and have recovered the price—although he might have
recovered the surplus, he was not bound to do so, neither was
he bound to hold on to it and thus violate the trust in virtue
of which he received it by a refusal to pay it over. We think
his original right of action remained wholly unimpaired by
his subsequent conduct, and that the ruling of the Circuit
Court was strictly correct.

Let the judgment be affirmed.